[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON ORDER FOR TEMPORARY CUSTODY
On June 7, 1991, the Department of Children and Youth Services (DCYS) filed a petition for an order of temporary custody (OTC) alleging that Alicia Q. (date of birth May 29, 1984), now age seven, and Elena Q. (date of birth June 29, 1985), now age 6, were neglected children in that they were sexually abused by their father, Ubaldo Q. On this same date, an ex parte order for temporary custody was signed by the court (Riefberg, J.) pursuant to section 46b-129(b)(2) of the Connecticut General Statutes. As required by this statute, the petition and the summary of facts were sworn to under oath by Lisa Hill, a DCYS social worker. It was alleged that there was reasonable cause to find that these children were living under circumstances and conditions that custody be immediately transferred to DCYS to safeguard their safety and welfare. Accordingly, DCYS arranged to move them into a foster home on June 7 where they have remained to this date.
The hearing on this petition was held on June 19 and July 8, 1991. The respondent parents were represented by separate counsel and both denied the allegations. DCYS called the following witnesses: Lisa Hill, social worker for DCYS; Marcia Heim, child therapist for Danbury Hospital Mental Health Clinic; Dr. Helen Chapman, Bethel Berry School guidance supervisor; and Dr. David Mantell, clinical child psychologist. The respondents called Bethel police officer, Ralph DeLuca, and Mrs. Q., the mother. Neither the State nor the respondents called the children as witnesses.
Before an order for temporary custody may be issued ex parte, as was the case here, the court must find that the facts alleged in the petition are sufficient to show a reasonable cause of neglect, which is the same as probable cause. Section 46b-129(b) Connecticut General Statutes. At contested hearing on such petition, DCYS is required to prove the allegations, in this case sexual molestation by the father, by a fair preponderance of the evidence. This is a higher standard than reasonable or probable cause necessary for an ex parte order to be granted. Our Supreme Court discussed at length the different standards of proof required and the principles of law as they relate to the temporary removal of children from their parents. In re Juvenile Appeal (83-CD), 189 Conn. 276 (1983). This higher burden of proof is always on the State when it seeks to remove children from their parents. CT Page 5890
The primary evidence relied on by DCYS to prove sexual molestation by the father was the testimony of Ms. Hill and Ms. Heim. The reports they prepared were entered as exhibits. Ms. Hill prepared a DCYS treatment plan that was marked as Respondents' Exhibit 1, and Ms. Heim's report was dated May 9, 1991, DCYS form 136, Suspected Child Abuse/Neglect (State's Exhibit A.) These reports were accusations made by Alicia to Ms. Heim that the father had touched her with his flat hand on the back, chest and midriff with a stroking motion. They both stated that she never was touched below the navel nor had the father ever asked her to touch his body. At the second interview with Ms. Heim on May 16, she recanted the statements of May 9 and said she had made up the story because her parents were always fighting. There were no physical examinations ordered nor medical evidence of sexual molestation offered by the State.
Dr. David Mantell, the clinical psychologist, testified that a comprehensive evaluation of both parents, as well as the children, should be ordered before an expert opinion could be offered on whether the children had been sexually abused. The allegations of touching parts of the child's body, described in State's Exhibit A, in themselves are not enough to form an opinion.
Bethel police detective, Ralph DeLuca, testified that DCYS requested an investigation of suspected sexual abuse, he therefore interviewed Alicia at her home. The officer showed her a diagram of the front and back of a child's body and asked her to circle the parts her father had touched. She circled basically the same parts of the body (i.e., chest, back and midriff) that she described to Ms. Heim and Ms. Hill. Based on her answers, he did not believe there were sufficient facts to find probable cause for sexual molestation, therefore the father was not arrested.
The mother testified that both she and her husband hugged, kissed, and stroked their children's body and thought nothing wrong doing it. In fact, they enjoyed loving and playing with their children in this manner. She never once saw her husband do anything that would make her suspicious of his sexually molesting either Alicia or Elena. Nevertheless, the day that Ms. Hill confronted her with Ms. Heim's report, she attended a meeting arranged by Ms. Hill at the Berry School to discuss these accusations. She orally agreed to have him leave home until the matter was settled in order that the children would remain in the home. A few days later, she brought Alicia to a pediatrician for a physical examination and was told there was no medical evidence that CT Page 5891 she had been sexually abused. She did admit having an argument when Ms. Hill made an unannounced visit to their home on June 7 at about 11:00 a.m. Upon finding the husband there, Ms. Hill told her that his presence in the home was in violation of her oral agreement. She explained that the family needed groceries and pampers for their infant, and since she did not have a car, called her husband to do this shopping for her. On this same day, Ms. Hill prepared and filed the petition for temporary custody which was granted ex parte on that same day. His presence at the home on that morning did not in any way serve to prove the allegations of sexual molestation nor can any negative inference be drawn from it. In fact, the children were in school at that time.
The definitions for neglected, abused, and uncared children are set forth in section 46b-120 of the Connecticut General Statutes. The term sexual molestation as referred to in the statute is not defined. However, section 53a-65 of the Connecticut General Statutes defines terms of sexual criminal offenses. Subparagraph (3) defines "sexual contact" as any "contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person." Subparagraph (8) "`[I]ntimate parts' means the genital area, groin, anus, inner thighs, buttocks or breasts." Even should the accusations made by Alicia be found as fact, the stroking of the back, chest and midriff by the father, these parts of the body would not be within this statutory definition.
The court fully recognizes that the safety and welfare of the child is very much in issue on an order for temporary custody. No such order may issue unless the child is suffering from serious physical illness or injuries or is in immediate physical danger. There are two competing interests, the safety of the child and the right of family integrity. In a temporary custody contested hearing, these two interests are best served by applying the normal civil standard of proof, which is a fair preponderance of the evidence. In re Juvenile Appeal (83-CD), supra, 298, 299.
The court has reviewed and considered all of the evidence and testimony and finds that the State has failed to prove by a fair preponderance of the evidence the allegations in the petition and that these two children are in such immediate physical danger that they should be removed from their natural parents. CT Page 5892
Based on these findings, the court revokes the order of temporary custody granted on June 7, 1991, and orders DCYS to return the two children, Alicia and Elena, to their parents.
The court retains jurisdiction of these parents through the four neglect petitions filed by DCYS on June 3, 1991. It is hereby ordered that psychological evaluations be performed on both parents as recommended by Dr. David Mantell and that medical examinations, as well as the psychological evaluations previously ordered, be performed on these two children.
Petroni, J.